**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **CONROE INDEPENDENT** § <br> **SCHOOL DISTRICT,** § <br> § <br> **Plaintiff,** § <br> § <br> v. § **CIVIL ACTION NO. _____** <br> § <br> **MARCELO RUIZ,** § <br> § <br> **Defendant.** § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Conroe Independent School District (CISD or the District) files this Original Complaint against Defendant Marcelo Ruiz (Defendant), as follows:

**1. Jurisdiction and Venue**

1.1   This action arises under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(i)(2)(A). The Court has jurisdiction over this action under the IDEA, 20 U.S.C. § 1415(i)(3)(A), as CISD is aggrieved by the findings and decision of Special Education Hearing Officer in a hearing conducted pursuant to the IDEA.

1.2   Venue properly lies in this Court pursuant to the general venue statute, 28 U.S.C. § 1391(b).

**2. Parties**

2.1   CISD is a public school district in the State of Texas. CISD was the Respondent in the administrative proceeding below.

2.2   Defendant recently graduated from high school in CISD and is a legal

adult. At all times material to this action, Defendant was a student in CISD. Defendant was the Petitioner in the administrative proceeding below.

**3.    Nature of the Action and Relief Sought**

3.1    This is an action under the IDEA appealing the decision of a hearing officer appointed by the Commissioner of Education of the State of Texas to consider an administrative complaint filed against CISD by Defendant, a student with a disability within the meaning of the IDEA.

3.2    After an evidentiary hearing, the hearing officer issued a decision on March 15, 2024, finding CISD (1) complied with its Child Find obligations under the IDEA, but (2) failed to develop and implement an appropriate Individualized Educational Program (IEP) for Defendant. The hearing officer ordered CISD to provide $2,900.00 in tutoring and counseling reimbursement, along with an unspecified amount of transition services. *See* Decision of the Hearing Officer, attached as Exhibit A.

3.3    The hearing officer's decision concerning the Child Find inquiry was correct. However, the hearing officer's other finding regarding the IEP's sufficiency and implementation was erroneous as a matter of law and fact. As such, CISD is entitled to an order from this Court reversing and vacating the portions of the hearing officer's decision favoring the Defendant.

**4.    Factual Background**

4.1    Defendant attended CISD for virtually his entire school career, having started in the District in first grade. His educational career in CISD began at Coulson Tough Elementary School. Defendant passed all his classes during elementary school

with grades ranging between As and Cs. He also passed all state assessments during the same period. Defendant's attendance in elementary school, which included a variety of excused and unexcused absences, varied from 16 in his first and sixth grade years, to just two his second-grade year.

4.3 In his last semester of sixth grade, Defendant's mother referred him for a dyslexia evaluation. While the testing showed two areas of weakness, they were both in timed testing components. Defendant's teachers and parents noted he tends to exhibit anxiety in certain situations, which likely explained the lower timed scores. After reviewing all the data, the Section 504 committee concluded Defendant did not need dyslexia interventions or accommodations.

4.4 At McCullough Junior High, Defendant performed similarly. He passed all his classes with grades ranging between As and Cs. His attendance improved during these two years; he only had a few absences each year. And, again, he passed all STAAR exams.

4.5 Defendant started his high school career much the same way he ended junior high school. That is, both before and after COVID-19 shut down the schools after Spring Break, Defendant's report card shows grades ranging from As to Cs. His attendance report notes just two excused absences.

4.6 When school resumed for the 2020–2021 school year, students were given a choice to attend in-person or virtually. Defendant made the difficult decision to attend virtually to do his part to keep his family safe. In October 2020, Defendant emailed his school counselor, acknowledging the impact the pandemic was having on his mental

health. The school counselor encouraged Defendant to seek out support instead of trying to take on so much by himself. The school counselor and Defendant exchanged emails about what he needed to do to pass the semester.

4.7     Later the same month, Defendant exchanged emails with his English teacher about his struggles to get his work done. As his English teacher aptly articulated, "Spending the past seven months in close proximity with family would be challenging for anyone." She also copied the school counselor on the email and noted, "This pandemic is stressful, and I want to help you get the support you need."

4.8     The next month, on November 18, Defendant sent a lengthy and thoughtful email to the school counselor explaining that the reason he wasn't doing well in school was because the virtual instruction was far inferior to the in-person instruction. Defendant noted that he was not alone in his opinion and that many other virtual learners felt the same way. He explained that the dire situation with his grades was unusual for him and that, normally, he would only forget a couple of homework assignments. He closed by asking if he would be able to pass the semester, and if not, he was going to look at homeschooling options. Ultimately, Defendant and his parents chose the one-on-one, in-person instruction offered at Fusion Academy, a private school.

4.9     With the change to in-person learning at Fusion, Defendant was able to leave the house and interact with other adults and students. He flourished. According to Defendant and his parents, his symptoms of anxiety and depression "improved dramatically." The resiliency he demonstrated with the move to Fusion was impressive, and he earned straight As.

4.10   The family ultimately decided Defendant would return to The Woodlands High School (TWHS) for his last two years of high school and graduate with his friends. Defendant started his junior year very focused on taking steps to study cinematic arts at a prestigious college.

4.11   Defendant was "doing so well in all his classes" during the first grading period. Unfortunately, in early November, Defendant had a difficult time recovering from surgery. By the end of November, Defendant's father emailed the school counselor noting Defendant had fallen behind after the surgery and asked if there was some type of assistance to help him catch up. In early December, Defendant's mother explained the situation with new medication, vomiting, and weight loss. Defendant's mother also emailed individual teachers explaining his absences and asking what needed to be done so he could pass. One of his teachers explained, "[Defendant] is a very smart student, and has been successful in my class prior to his medical issues. I do believe that he can catch back up."

4.12   Unfortunately, the beginning of the next semester started with Defendant's experiencing COVID-19 symptoms. Defendant learned on January 10, 2022 he was negative; but, the following day, he learned his brother was positive. Although cleared to return to school on January 13, 2022, on January 18, 2022, Defendant started experiencing COVID-19 symptoms, including a fever. Defendant soon emailed his teachers, explaining his illness made it difficult to get out of bed, and he would much rather be at school than sit at home with nothing to do. During the semester, the school counselor communicated with Defendant to keep him informed of his grades and

5

academic circumstances. He also continued communicating with CISD staff about how to pursue a career as a film director. Despite the rocky start to the second semester with COVID-19-related absences, Defendant felt he was improving with the help of a friend.

4.13   At the end of April, three of Defendant's teachers were informed he was being evaluated by a private entity and they were asked to complete the forms to provide input. On or about May 5, 2022, Defendant's mother also asked the school to conduct new dyslexia testing. Defendant's mother confirmed that she did not want CISD to conduct a Full and Individual Evaluation (FIE) to consider special education services; instead, she only wanted to test Defendant for dyslexia. The dyslexia evaluation commenced immediately.

4.14.   Tragically, in early May, Defendant's friend died suddenly. On top of that, when he was going to return to school, his brother called from college with an emergency that required the family to travel to College Station in the middle of the night. As Defendant explained, "[I]t's been extremely difficult to function at school with everything going on." Ultimately, Defendant had to retake Physics A in summer school. He successfully completed the summer class with a grade of 99.

4.15   Over the summer of 2022, Defendant attended an "intense" film camp in California that he enjoyed and at which he was successful. Also, over the summer, Defendant's mother emailed the school counselor about pursuing Section 504 accommodations for his senior year based on a recent ADHD diagnosis. In her reply, the school counselor copied one of her colleagues, who would be Defendant's senior-year counselor.

4.16 Like the previous year, Defendant started out the new school year very focused on college entrance requirements and letters of recommendation. He also advocated with his school counselor to receive Section 504 accommodations based on the new ADHD diagnosis. School staff explained they only needed a copy of the diagnosis to initiate the process. Around the same time, on August 19, 2022, CISD personnel sent Defendant's parents the paperwork that needed to be completed for the Section 504 referral. When over a week had passed and Defendant's parents had not returned the paperwork, CISD personnel reached out again. Defendant's mother apologized for the delay, noting she wanted her husband to review it and that he had been out of town. She returned the paperwork a week later. In support of Section 504 accommodations, the family did not provide the recently completed private evaluation, but instead sent two letters – one noting ADHD and a second noting Generalized Anxiety Disorder. The dyslexia testing was completed on October 11, 2022, finding that Defendant qualified for dyslexia services. Two days later, school staff offered a Section 504 meeting. The family accepted.

4.17 In preparation for the Section 504 meeting, information from Defendant's teachers was collected regarding his current grades, instructional concerns, behavioral concerns, and needed accommodations. Several teachers noted concerns with missing or late assignments, and only one noted that Defendant would benefit from having an accommodation – specifically, additional time. Unfortunately, because CISD was not informed the family would be bringing an advocate, the Section 504 meeting had to be tabled so that CISD could include a central administration representative.

4.18   At the reconvened Section 504 meeting, the advocate accused CISD of committing a Child Find violation "in so many ways." She explained that CISD needed to make its best offer of intensive dyslexia intervention. CISD proposed 90 minutes a day, three days a week with a highly qualified instructor. Unfortunately, the offer was summarily rejected because (1) Defendant didn't want to change his schedule; and (2) the advocate didn't believe the Reading by Design (RBD) program could be sufficiently individualized to meet Defendant's needs. Instead, the advocate wanted the school to reserve a space for Defendant to use to access private services that the parent would pay for. The school agreed to make a space available. The Section 504 committee agreed on a handful of accommodations, a weekly check-in with his school counselor, and a special education evaluation requested by the advocate. Also at this time, CISD gave Defendant access to Learning Ally, an application that can assist students with reading. While the FIE was pending, Defendant completed his first semester with one A, three Bs, and two Cs. He had approximately three absences.

4.19   At the beginning of the second semester, an assistive technology (AT) specialist for CISD tried to schedule a meeting with Defendant and his parents to discuss Defendant's AT needs. By the end of January, neither Defendant nor his parents had made themselves available.

4.20   The FIE was completed on February 16, 2023, and recommended eligibility as a student with an Emotional Disturbance (ED) and a Specific Learning Disability (SLD) due to reading fluency deficits associated with his dyslexia. With respect to emotional disturbance, the evaluation concluded Defendant qualified in one of the five

areas. The conclusion that this criterion was met was supported by the reports of Defendant and his parents that when he experiences anxiety, he is unable to attend school. With respect to reading, Defendant's weakness in reading fluency correlated with a cognitive deficit in Retrieval Fluency, thus indicating an SLD. The ARD committee convened on March 9, 2023, and it discussed that Defendant had met all graduation requirements (save for the courses he was enrolled in at the time) and would graduate in a few weeks. He had passed all required End of Course (EOC) examinations. In fact, most recently, he passed the U.S. History examination, receiving the highest passing rate possible – "mastery." And he did so without any accommodations, reading or otherwise.

4.21    Despite Defendant's successes, CISD consistently erred on the side of ensuring Defendant received whatever supports he might need to successfully complete his senior year. Additional accommodations were agreed to, including several that provided Defendant access to AT. The IEP included four goals: a transition goal, a self-advocacy goal, a goal for turning in work on time, and a counseling goal. The only special education support deemed necessary to support the goals were two, 20-minute sessions with a special education teacher. In addition, counseling as a related service was recommended for three, 20-minute sessions to implement the counseling goal. The meeting ended in consensus.

4.22    The request for a due process hearing was filed less than two months later, on May 3, 2023, alleging CISD violated its Child Find obligations to Defendant. The hearing officer issued a decision on March 15, 2024.

**5.     Claim for Relief – IDEA**

5.1     The hearing officer's order is erroneous as a matter of law with respect to the IEP sufficiency and implementation issue. *First*, the hearing officer erred by considering and ruling on matters not properly raised for the due process hearing. The IDEA prohibits a party requesting a due process hearing from "rais[ing] issues at the due process hearing that were not raised in the due process complaint . . . , unless the other party agrees otherwise." 20 U.S.C. § 1415(f)(3)(B); 34 C.F.R. § 300.511(d). Defendant did not raise the IEP development or implementation issue in his complaint or timely request leave from the hearing officer to amend his complaint, so the issue was forfeited and should not have been considered by the hearing officer.

5.2     *Second*, under the IDEA, school districts are entitled to a presumption that their educational programs are appropriate. *Schaffer v. Weast*, 546 U.S. 49, 61 (2005). The burden of proof remains with the party challenging the school district's decisions. *Id.* Despite acknowledging a lack of evidence, the hearing officer nonetheless ruled in Defendant's favor on the improperly raised IEP sufficiency and implementation issue. This application of the burden of proof was erroneous. Furthermore, the hearing officer's decision contradicts the greater weight of competent evidence.

5.3     Moreover, Defendant is not a prevailing party entitled to an award of fees. CISD made an offer of settlement following the resolution session convened pursuant to the IDEA. 20 U.S.C. § 1415(i)(3)(D)(i); 34 C.F.R. § 300.517(c)(2)(i). That offer of settlement was made before Defendant retained an attorney and was more favorable than the relief eventually ordered by the hearing officer. Thus, Defendant is not a prevailing

party. Furthermore, the relief awarded by the hearing officer was *de minimis* and insufficient to confer prevailing party status under the IDEA.

**6.     Prayer**

CISD prays the Court receive the records of the administrative proceedings as required by the IDEA and award CISD the following relief:

(1)     enter a judgment reversing and vacating those portions of the hearing officer's decision finding that CISD did not properly develop and implement Defendant's IEP;

(2)     enter a judgment reversing and vacating those portions of the hearing officer's decision against CISD, and find CISD at all times provided Defendant with an appropriate educational program as required by the IDEA;

(3)     enter a judgment reversing a vacating the relief ordered by the hearing officer's decision, including tutoring reimbursement, counseling reimbursement, and transition services;

(4)     enter a judgment in favor of CISD, declaring that Defendant is not a prevailing party entitled to an award of attorney's fees; and

(5)     award CISD any other and further relief as the Court determines is appropriate.

Respectfully submitted,

ROGERS, MORRIS & GROVER, L.L.P.

*/s/ Amy Tucker*

AMY TUCKER
Attorney-in-Charge
Fed. I.D. No. 36798
State Bar No. 24042068
Email:  atucker@rmgllp.com
KYLE STONE
Fed. I.D. No. 3725253
State Bar No. 24117100
Email:  kstone@rmgllp.com
5718 Westheimer Road, Suite 1200
Houston, Texas 77057
Telephone:    (713) 960-6000
Facsimile:      (713) 960-6025

ATTORNEYS FOR PLAINTIFF